UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

------------------------------------------------------------x
CHRISTOPHER LITOWCHAK,  )
    acting on behalf of infant children,  )
    M.L. and A.L.,  )
                                  Petitioner,  )
                                  )  Civil Action No.: 2:15- CV-185
    -against-  )
ELIZABETH LITOWCHAK,  )
                                  Respondent.  )
------------------------------------------------------------x

**MEMORANDUM IN SUPPORT OF PETITIONER'S
MOTION FOR LEAVE TO FILE AN AMENDED PETITION**

Pursuant to Federal Rule of Civil Procedure 15(a) and Vermont Local Rule 15, Petitioner Christopher Litowchak, ("Petitioner"), by and through his undersigned counsel, respectfully move this Court for leave to file an Amended Petition (the "Amended Petition") to add Alan Betts, who is Respondent Elizabeth Litowchak's father, as a Respondent.[1]

**PRELIMINARY STATEMENT**

In this action, pursuant to the Convention on the Civil Aspect of International Child Abduction, done at the Hague on October 25, 1980 (the "Convention") and the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9001 *et. seq*, Petitioner seeks, among other things, an order directing that his and Respondent Elizabeth Litowchak's children, Matilda and Angus Litowchak, be returned to their Habitual Residence of Australia, pursuant to Article 12 of the Convention.

The proposed Amended Petition maintains virtually the same allegations as against Respondent Elizabeth Litowchak. It simply adds allegations, a good portion of which are based on

---

[1] A redlined copy of Petitioner's proposed Amended Petition clearly designating additions and deletions, is attached to the accompanying Affirmation of Gary von Stange as Exhibit 1. A non-redlined copy of Petitioner's proposed Amended Petition is attached to the accompanying Affirmation of Gary von Stange as Exhibit 2.

facts that have been learned since the filing of the original Petition, as against Elizabeth Litowchak's father, Alan Betts.

Petitioner's motion should be granted.  "A court should freely give leave to amend 'when justice so requires.'" *Vaughan v. Vt. Law School, Inc.*, No. 2:10–cv–276, 2011 WL 3421521, at * 3 (D. Vt. Aug. 4, 2011) (quoting Fed. R. Civ. P. 15(a)).  Motions for leave to amend a complaint or to add parties should be liberally granted and "'denied only for such reasons as undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party.'"  *Id.* (quoting *Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.,* 404 F.3d 566, 603 (2d Cir. 2005).  None of the factors supporting denial are present here.

Rather, Petitioner seek to amend the Petition at the infancy of this case—prior to the conduct of any discovery, before the filing of any substantive motion practice, and before trial.  Moreover, case law is replete not only with examples of a grandparent named as an additional Respondent in a Hague Convention case Petition, but also holding the grandparent financially responsible for the role he or she played in the wrongful removal and/or retention of a child or children.  Petitioner's motion to amend is based in part on information that was concealed by Respondents at the time the original Petition was filed.

### STATEMENT OF FACTS RELATING TO PETITIONER'S MOTION FOR LEAVE TO FILE THE AMENDED PETITION

Because the proposed Amended Complaint maintains the same allegations as against Respondent Elizabeth Litowchak and simply adds allegations against the children's grandfather Alan Betts, the facts set forth in this section shall address Respondent Alan Betts' role in the removal and retention of the Litowchak children.

1.      On or about February 28, 2015, Alan Betts purchased plane tickets for the removal of Elizabeth, Matilda, and Angus Litowchak from Australia to Singapore and arranged for them to stay

**von Stange Law, PLC**
70 South Winooski Ave. Ste. 1B
Burlington, VT  05401

2

with a personal friend of Alan Betts.  The actual flight date was March 3, 2015.  *See* Christopher Litowchak Affidavit in Support of Motion for Leave to Amend the Petition ("C. Litowchak Aff.") at ¶ 2.

   2.   On or about March 3, 2015, Alan Betts purchased plane tickets for Elizabeth, Matilda and Angus Litowchak to transit from Singapore to New York, USA.  The actual flight date was March 5, 2015.  *See* C. Litowchak Aff. at ¶ 3.

   3.   On or about March 8, 2015, Alan Betts contacted John Reid, the Chief Executive Officer of Petitioner's Employer, OMSA, to demand reimbursement for the flights he paid for to remove Elizabeth, Matilda, and Angus Litowchak from Australia.  *See* C. Litowchak Aff. at ¶ 4.

   4.   On or about March 9, 2015, Alan Betts sent related travel invoices as well as a Police Report from Western Australian police, a case that was dismissed due to lack of evidence, to Mr. Reid for the purpose of again demanding reimbursement of the above-referenced travel expenses and for discrediting Christopher Litowchak to his employer company and its CEO.  *See* C. Litowchak Aff. at ¶ 5.

   5.   On or about March 12, 2015, Christopher Litowchak contacted Alan Betts via telephone after being called into a conference with OMSA CEO John Reid and Ben Mathews, the General Manager of Employee Relations at OMSA.  At that conference, for the first time since February 28, 2015, Christopher Litowchak learned of the actual whereabouts of his children.  *See* C. Litowchak Aff. at ¶ 6.

   6.   It was during this telephone call with Alan Betts that Mr. Betts admitted that he was housing Respondent Elizabeth Litowchak and the children.  *See* C. Litowchak Aff. at ¶ 7.

   7.   On or about March 13, 2015, Alan Betts once again contacted OMSA CEO John Reid, this time by email, again demanding payment for the above-referenced travel expenses and also sent to Mr. Reid invoices for personal items shipped for Elizabeth, Matilda, and Angus at the time of their removal from Australian.  *See* C. Litowchak Aff. at ¶ 8.

   8.   On or about March 13, 2015, Alan Betts emailed Christopher Litowchak with bank details demanding money.  *See* C. Litowchak Aff. at ¶ 9.

**von Stange Law, PLC**
70 South Winooski Ave. Ste. 1B
Burlington, VT  05401

3

9. On or about April 8, 2015, Christopher Litowchak sent Alan Betts an email demanding the return of the children to Australia. *See* C. Litowchak Aff. at ¶ 10.

10. On or about April 10, 2015, Christopher Litowchak contacted the Pittsford, Vermont Police Department seeking a welfare check of the children because he had not heard from them in weeks. *See* C. Litowchak Aff. at ¶ 11.

11. On or about April 12, 2015, Christopher Litowchak received an email from the Pittsford, Vermont Police Department stating that a welfare check had been conducted of the children, that they were told by Alan Betts that the children were sleeping, and that they did not investigate further. Upon information and belief, Alan Betts provided false information to the Pittsford Police Department in a further attempt to conceal the children from Christopher Litowchak and in furtherance of the wrongful retention of the children because at that time of the welfare check the children were not at Alan Betts' residence, but instead were living in an apartment with Elizabeth Litowchak. *See* C. Litowchak Aff. at ¶ 12.

12. On or about May 4, 2015, Alan Betts again contacted OMSA CEO John Reid via telephone again demanding repayment for tickets and expenses that Alan Betts claims he incurred while facilitating the removal of Elizabeth, Matilda, and Angus Litowchak from Australia. *See* C. Litowchak Aff. at ¶ 13.

13. On or about May 11, 2015, Alan Betts again contacted OMSA CEO John Reid via email, again demanding payment for expenses that Alan Betts claims he incurred while facilitating the removal of Elizabeth, Matilda, and Angus Litowchak from Australia. *See* C. Litowchak Aff. at ¶ 14.

14. On or about August 21, 2015, Alan Betts wrongfully contacted the Family Court of Western Australia in an attempt to undermine Christopher Litowchak before that body. In doing so, Mr. Betts provided false information to the Court, incorrectly identified documents and omitted other documents. The Western Australia Court informed Mr. Betts that his conduct was wrongful informing him that all correspondence to the Court must be copied to all parties, that Mr. Betts had failed to copy Mr. Litowchak and so the Court was forwarding Mr. Betts' correspondence to Mr. Litowchak. The

**von Stange Law, PLC**
70 South Winooski Ave. Ste. 1B
Burlington, VT  05401

4

Court also informed that Mr. Betts that "no further action to [his] letter [was] required" because Mr. Betts was not a party to the Western Australian Family Court action.  *See* C. Litowchak Aff. at ¶ 15.

15.     On or about August 26, 2015, Alan Betts again contacted OMSA CEO John Reid by email demanding that the Company enforce a child support application that Mr. Betts wrongfully insisted was a child support order and again defamed Christopher Litowchak to his employer stating that Mr. Litowchak had refused to pay child support.  *See* C. Litowchak Aff. at ¶ 16.

16.     On or about August 26, 2015, OMSA General Manager of Employee Relations Ben Mathews contacted Alan Betts informing him that the document Mr. Betts claimed was a Child Support Order was not an Order, and stated that the company had no role at that point in the matter between Elizabeth Litowchak and Christopher Litowchak.  *See* C. Litowchak Aff. at ¶ 17.

17.     In sum, Alan Betts actively participated in the wrongful removal and retention of the children from Australia to Vermont by undertaking acts that included, but were not limited to, planning and purchasing airline tickets for Respondent Elizabeth Litowchak and the children, arranging and housing them for a period of time, and participating in the concealment of their location from Christopher Litowchak.  *See* C. Litowchak Aff. at ¶ 18.

## ARGUMENT

**PLAINTIFF HAS MET THE STANDARD FOR OBTAINING LEAVE TO FILE AN AMENDED COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 15**

As this Court held in *Nashef v. AADCO Medical, Inc.*, 947 F.Supp.2d 413 (D.Vt. 2013) (J. Reiss), Fed. R. Civ. P. 15(a)(2) "provides that leave to amend 'shall be freely given when justice so requires,' and it is rare that such leave should be denied, especially when there has been no prior amendment" (*citing Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991) (internal citations omitted)).   There has been no prior amendment in this case.  Moreover, a motion to amend pursuant to Rule 15(a)(2) "should be denied only for such reasons as undue delay, bad faith, futility of the amendment, and perhaps the most important, the resulting prejudice to the other party."

**von Stange Law, PLC**
70 South Winooski Ave. Ste. 1B
Burlington, VT  05401

5

*Cas. & Sur. Co. v. Aniero Concrete Co., Inc.,* 404 F.3d 566, 603 (2d Cir.2005) (internal citation and quotation marks omitted).  None of these factors are even remotely present here.

This Court has also held that "[L]eave to amend will be denied as futile ... if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim[.]" *Nashef* at 422 (*citing Milanese v. Rust–Oleum Corp.,* 244 F.3d 104, 110 (2d Cir.2001)).  As demonstrated below, the Proposed Amended Petition will survive a motion to dismiss for failure to state a claim should one be brought.  The relevant case law is replete with decisions holding those who have conducted themselves as Mr. Betts has to be appropriate respondents in Hague Convention cases.  Moreover, "Keeping in mind the principle that leave to amend should be freely given, it is the non-moving party's burden to demonstrate" that leave to amend should be denied.  *Roller Bearing Co. of Am., Inc. v. Am. Software, Inc.,* 570 F.Supp.2d 376, 385 (D.Conn.2008).

Federal Rule of Civil Procedure 21 provides, in relevant part, that "on motion, or on its own, the court may at any time, on just terms, add or drop a party."  Courts apply the same liberal standard applicable to Rule 15 when considering a motion to add a party under Rule 21.  *Wiggins v. District Cablevision, Inc.*, 853 F. Supp. 484, 499 n.29 (D.D.C. 1994) (noting that "it is well established that after a responsive pleading has been served, the standards for adding parties are the same whether the motion is made under Rule 15 or Rule 21."); *Oneida Indian Nation v. Cnty of Oneida*, 199 F.R.D. 61, 72 (N.D.N.Y. 2000).  In deciding whether to allow the addition of parties under Rule 21, courts consider "basic principles such as fundamental fairness and judicial economy, whether an order under [Rule 21] would prejudice any party or would result in undue delay, and the threats of duplicitous litigation and inconsistent jury verdicts." *John S. Clark Co., Inc. v. Travelers Indem. Co. of Ill.*, 359 F. Supp. 2d 429, 440 (M.D.N.C. 2004).  Amendments that seek to add parties are generally permitted, and courts regularly grant motions to amend complaints to add defendants. *See Rissman v. City of New York*, No. 01 Civ. 6284, 2001 WL 1398655, at *1 (S.D.N.Y. Nov. 9, 2001) (granting motion seeking leave to amend under Rules 15 and 21 where Plaintiff had already

**von Stange Law, PLC**
70 South Winooski Ave. Ste. 1B
Burlington, VT  05401

6

amended once as a matter of course under Rule 15(a)(1) and holding that "[u]nder Rule 21, a party may be added to an action at any stage of the action and on such terms as are just") (citation omitted); *Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 299 F. Supp. 2d 565, 571 (E.D. Va. 2004) (granting motion to amend the complaint to add parties where the claims asserted against those new parties were not clearly frivolous or patently defective); *Project Release v. Prevost*, 463 F. Supp. 1033, 1037 (E.D.N.Y. 1978) (granting a request to add a party defendant so as to assure plaintiffs complete relief should they prevail on the merits in the action).

There is no basis on which to deny Petitioner's motion for leave to file an Amended Petition. Given the early stage of these proceedings, there simply is no possibility that the amendment would prejudice the current or newly added defendant, Petitioner has not acted in bad faith, and the amendment is not futile. *Aetna*, 404 F.3d at 603-04 (amendment should be denied "only for such reasons as undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party") (internal quotation marks and citation omitted); *Arroyo v. Milton Acad.*, 5:10-CV-117, 2011 WL 65938, at *1 (D. Vt. Jan. 10, 2011) (same).

"A prejudicial amendment is one that raises a new legal theory that would require the gathering and analysis of facts not already considered by the defendant, and is offered shortly before or during trial." *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006) (citations omitted). The Proposed Amended Petition does not raise any "new legal theories" requiring the "gathering and analysis" of new facts, nor is the amendment being offered "shortly before or during trial." To the contrary, this case is in its infancy. Only initial disclosures have been exchanged and adding Alan Betts as a Respondent would not change Petitioner's initial disclosures in any way. Moreover, Petitioner has repeatedly stated to Respondent's counsel, including before this Court on September 4, 2015, that Petitioner intended to add Dr. Betts as a Respondent.

In addition, there is no discovery schedule in place at this time. Absent the exchange of initial disclosures, no discovery has been taken.

**von Stange Law, PLC**
70 South Winooski Ave. Ste. 1B
Burlington, VT  05401

7

Nor can it be argued that Petitioner is acting in bad faith by seeking leave to file an Amended Petition. "When determining whether bad faith is present, the court typically will take into account the movant's delay in seeking the amendment." *Shinn v. Greeness*, 218 F.R.D. 478, 486 (M.D.N.C. 2003) (citation omitted). Here, Petitioner and Respondent Elizabeth Litowchak unsuccessfully sought to resolve this case through mediation and negotiation thereafter. Since last week, when negotiations broke down and resolution was not forthcoming, Petitioner has worked expeditiously to gather information regarding Alan Betts' role in this matter and to synthesize that information in a manner that allows Petitioner to appropriately add him to this action in a timely manner. The Proposed Amended Petitioner is the result of these good faith efforts.

Finally, the proposed amendments embodied in the Amended Petition are not futile. An amendment "should only be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986); *see also Crago v. Capital Advantage Fin. and Dev., Inc.*, 242 F.R.D. 341, 342 (D.S.C. 2007) (same). An amendment that adds parties is futile only when there is no basis in the federal rules to hold the party to be added liable. *See, e.g.*, *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (noting that a motion to amend complaint should be denied as futile where opposing party would be entitled to summary judgment on proposed amended complaint); *Dougherty v. Town of North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) ("An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6).").

Here, no issue of futility could possibly arise, as Petitioner is merely adding Alan Betts as a Respondent and numerous Federal Courts decisions serve as authority that Mr. Betts is a proper Respondent under facts on all fours to those in this action. Accordingly, the Proposed Amended Petition is not "clearly insufficient or frivolous on its face." *Johnson*, 785 F.2d at 510. Moreover, the *Pérez-Vera Report* (the "Report"), which is the product of the official reporter of the 1980

**von Stange Law, PLC**
70 South Winooski Ave. Ste. 1B
Burlington, VT  05401

8

sessions of the Hague Conference that led to the approval of the Convention, specifically and expressly articulates a basis for adding Alan Betts as a Respondent.[2]  The Report is recognized as the official history and commentary to the Hague Convention and is a "source of the background on the meaning of the provisions of the Convention.[3]  U.S. Courts routinely cite to the Report for guidance on interpreting the treaty.[4]

Paragraph 81 of the Report, addressing "potential abductors" provides:

> The Convention contains no express provision on this matter [potential abductors].  Nevertheless, two comments may be drawn from the text as a whole, which shed light upon this question in relation to the Convention's scope *ratione personae*. The first concerns the physical persons who may be responsible for the removal or retention of a child. On this, the Convention upholds the point of view adopted by the Special Commission by not attributing such acts exclusively to one of the parents. Since the idea of 'family' was more or less wide, depending on the different cultural conceptions which surround it, it was felt better to hold a wide view which would, for example, allow removals by a grandfather or adoptive father to be characterized as child abduction, in accordance with the Convention's use of that term.

Lest there be any doubt that the Report serves as authority to assist United States Federal Courts on the application and provisions of the Convention, not only have Federal District Court relied upon and cited to the Report, so has the Second Circuit Court of Appeals and the United States Supreme Court, both of whom which have repeatedly consulted the Report.  For example, in *Abbott v. Abbott*, 560 U.S. 1, 19-20, 130 S.Ct. 1983 (2010), a Chilean father filed suit in Federal seeking an order requiring his son's return under the Convention and the implementing statute, ICARA, just as Christopher Litowchak has done here.  In *Abbott*, the Supreme Court found that "[a] history of the Convention, known as the Perez–Vera Report, has been cited both by the parties and by Courts of Appeals that have considered this issue."  560 U.S. at 19.  Justice Kennedy writing for

---

[2] The *Pérez-Vera Report* may be accessed and downloaded at the website of the Hague Conference on Private International Law, at http://hcch.e-vision.nl/index_en.php?act=publications.details&pid=2779&dtid=3.

[3] *See, e.g.*, *Simcox v. Simcox*, 511 F.3d 594, 605 n.3 (6th Cir. 2007); *Mozes v. Mozes*, 239 F.3d 1067 (9th Cir. 2001).

[4] *See, e.g.*, *Barzilay v. Barzilay* (*Barzilay II*), 600 F.3d 912, 916–17 (8th Cir. 2010); *Asvesta v. Petroutsas*, 580 F.3d 1000, 1004 (9th Cir. 2009).

**von Stange Law, PLC**
70 South Winooski Ave. Ste. 1B
Burlington, VT  05401

the majority referred to the Report stating that it was "fully consistent with" the majority's conclusion. *Id*. Even the dissent in *Abbott* referred to the Report as authority. 560 U.S. at 24 (citing the Report to determine the Convention drafters' primary concern).

In the second Supreme Court case arising out of Hague Abduction Convention litigation, the Court again consulted the Report, this time in regard to habitual residence and children's welfare which led to contracting states to draw up the Convention. *Chafin v. Chafin*, _ U.S.__, _, 133 S. Ct. 1017, 1029 (2013). Similarly, numerous federal appellate courts have consulted the Report. *See*, *e.g.*, *Reyes v. Jeffcoat*, 548 Fed. Appx. 887, 890, 2013 WL 6698603, at *3 (4th Cir. Dec. 20, 2013) (not only citing to, but also quoting the Report).

In particular, the Second Circuit has held "[w]e have repeatedly observed that the Pérez–Vera Report is 'an authoritative source for interpreting the Convention's provisions.'" *Guzzo v. Cristofano*, 719 F.3d 100, 106 & n.4 (2d Cir. 2013) (also citing to the Report for guidance on the "importance of the 'habitual residence' concept"). The Second Circuit in *Ozaltin v. Ozaltin*, 708 F.3d 355, 369-70 n.21 (2d Cir. 2013) held that

> Elisa Pérez–Vera was "the official Hague Conference reporter for the Convention." Hague International Child Abduction Convention; Text and Legal Analysis, 51 Fed.Reg. [10,494,] 10,503 [ (Mar. 26, 1986) ]. "Her explanatory report [was] recognized by the Conference as the official history and commentary on the Convention," *id.*, and we have previously held that "it is an authoritative source for interpreting the Convention's provisions," *Croll v. Croll*, 229 F.3d 133, 137 n. 3 (2d Cir.2000) (citation omitted), *abrogated on other grounds by Abbott*, 130 S.Ct. 1983; *see also Gitter*, 396 F.3d at 129 & n. 4.

Accordingly, the Report, which as shown above expressly provides that removals or retentions of a child by a grandfather may render that grandfather responsible for abduction provides clear authority for adding Alan Betts, the grandfather of Matilda and Angus Litowchak, as a Respondent. Not surprisingly, United States Federal Courts routinely hold the same to be true.

For example, in *Neves v. Perreira*, *Patel and Patel*, 637 F.Supp.2d 322, (W.D.N.C. 2009),

**von Stange Law, PLC**
70 South Winooski Ave. Ste. 1B
Burlington, VT  05401

10

the Court extended liability beyond the parent who had wrongfully removed and retained the children to hold the Respondents Patels responsible in part for the wrongful removal of the children finding, like here with Mr. Betts and Ms. Litowchak, that the "Patels' assistance was integral to Respondent Neves's plans." In *Neves*, the Court found that Mahesh Patel made the travel arrangements for the father, Respondent Neves, to leave Germany with the children, and "[o]nce Respondent Neves arrived in the United States with the children, the Patels further assisted Respondent Neves by allowing him and the children to reside in their home."

Here, as in *Neves*, Mr. Betts assistance was integral to Respondent Elizabeth Litowchak's plans. Mr. Betts made travel arrangements for Respondent Elizabeth Litowchak to leave Australia with the children. And once Respondent Elizabeth Litowchak arrived in the United States, Mr. Betts further assisted Respondent Litowchak by allowing her and the children to reside in his home for a period of time.

In *Diabo v. Delisle, Thomas, Raus and Thomas*, 500 F. Supp. 2d 159 (N.D. N.Y. 2007), a Hague Convention case as implemented by ICARA, the District Court held that a mother who was successful in her action for the return of the children from the United States to their habitual residence in Canada could be entitled to an award of necessary expenses, court costs and legal fees, against not only the Respondent, but also against the children's grandparents for their role.

And in *March v. Lawrence Levine and Carolyn Levine*, 136 F. Supp. 2d 831 (M.D. Tenn. 2000), *aff'd on other grounds*, 249 F.3d 462, 2001 FED App. 0126P (6th Cir. 2001), the District Court awarded the Petitioner father attorney's fees and costs pursuant to the International Child Abduction Remedies Act (ICARA), 42 U.S.C.A. § 11607(b). In *March*, the father brought a petition for the return of his two children under the Hague Convention as implemented by ICARA, and the court found the children had been wrongfully retained by their maternal grandparents in the United States. Similarly, Alan Betts has played an integral role in the wrongful retention of the Litowchak children.

**von Stange Law, PLC**
70 South Winooski Ave. Ste. 1B
Burlington, VT  05401

- In *March*, despite the grandparents' allegations that the father killed the children's mother, the Court found that the father had not been indicted and that the children were habitual residents of Mexico in their father's custody when the grandparents wrongfully retained them in the United States. The court ordered the children returned to their father in Mexico and ordered that the grandparents pay the children's airfare, all costs associated with the return of the children to Mexico, and court and reasonable attorney's fees of the father, pursuant to § 11607(b). Similarly here, upon a finding of wrongful retention and the role played by grandfather Alan Betts in the wrongful retention, the Court should order Alan Betts to pay all costs associated with the return of the children to Australia including but not limited to the children's airfare, and court and reasonable attorney's fees expended by Petitioner Christopher Litowchak.

## CONCLUSION

For the foregoing reasons, Petitioner Christopher Litowchak respectfully requests that the Court grant his Motion for Leave to File the Proposed Amended Complaint.

RESPECTFULLY SUBMITTED this 1st day of November, 2015.

> VON STANGE LAW, PLC
>
> By:   /s/Gary von Stange
>         Gary von Stange, Esq.
>         70 South Winooski Ave. Ste. 1B
>         Burlington, Vermont 05401
>         Telephone: (802) 651-6970
>         Facsimile:  (802) 985-2253
>         gvonstange@vonstangelaw.com
>         *Counsel for Petitioner*
>
>         /s/Robert D. Arenstein
>         Robert D. Arenstein, Esq.
>         Law Offices of Robert D. Arenstein
>         295 Madison Avenue, 16th Floor
>         New York, New York 10017
>         Telephone: (212) 679-3999
>         Facsimile: (212) 370-5822
>         *Counsel for Petitioner*